UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:

JODELL M. ALTIER,

        Debtor.

                                Bankr. Case Nos. 6:15-bk-1838-KSJ
                                                6:15-ap-0156-KSJ
                                                6:16-ap-0013-KSJ

_____

DARRIN C. LAVINE,

        Appellant,

v.                                                             Case No. 6:16-cv-1899-Orl-37

GOSHEN MORTGAGE LLC,

        Appellee,

_____

## ORDER

In this appeal, Appellant Darrin Lavine ("**Lavine**") challenges a bankruptcy court order granting Justin Luna's ("**Mr. Luna**"), counsel for Appellee Goshen Mortgage LLC ("**Goshen**"), motion to substitute as counsel for Grand Legacy Group ("**GLG**") in *Chambers v. Altier*, Case No. 6:16-ap-00013-KSJ ("**2016 Adversary Proceeding**").[1] (*See*

---

[1] The 2016 Adversary Proceeding is one of two adversary proceedings stemming from the underlying bankruptcy action. On April 15, 2016, the bankruptcy court consolidated these adversary proceedings and directed that all papers be docketed in *Goshen Mortgage, LLC v. Altier*, Case No. 6:15-ap-00156-KSJ ("**2015 Adversary Proceeding**"). (*See* 2015 Adversary Proceeding, Doc. 21.)

As explained more fully below, GLG was one of several defendants in the 2016

-1-

Doc. 4-2 ("**Substitution Order**").) Upon review of the parties' briefing and the bankruptcy record, the Court initially expressed concern that this appeal was moot. (*See* Doc. 29.) The Court then determined that, even if not moot, the Court lacks appellate jurisdiction over the Substitution Order, and the appeal is due to be dismissed.

I. BACKGROUND

The serpentine nature of the underlying bankruptcy proceedings requires the Court to recount the relevant events that led to the instant appeal. On March 4, 2015, Debtor filed a voluntary petition for bankruptcy. (*See In re Altier*, 6:15-bk-1838-KSJ ("**Bankruptcy Action**"), Doc. 1.) In connection with the Bankruptcy Action, Debtor purportedly failed to disclose, *inter alia*, her interest in GLG, an incorporated entity that held Debtor's real property interests.[2] (*See* 2015 Adversary Proceeding, Doc. 1.) Debtor's failure to disclose such interests led to the initiation of the 2015 and 2016 Adversary Proceedings, in which Goshen and the acting bankruptcy trustee, Gene T. Chambers ("**Chambers**"), alleged that Debtor had engaged in misrepresentation and fraud, respectively. (*See* 2015 Adversary Proceeding, Doc. 1; *see also* 2016 Adversary Proceeding, Doc. 1.)

Following initiation of these Adversary Proceedings, on motion by Chambers, the bankruptcy court ordered Debtor to turn over possession "of the original 'bearer shares' stock certificates for all 1,000 shares of [GLG]" ("**GLG Shares**") to Chambers.

---

Adversary Proceeding. (*See* 2016 Adversary Proceeding, Doc. 1.)
 [2] Lavine served as the original trustee of GLG. (*See* Bankruptcy Action, Doc. 88.) As of August 15, 2016, Jonathan Bull ("**Mr. Bull**") and the Liberty Law Team represented Lavine and GLG. (*See* 2015 Adversary Proceeding, Doc. 45.)

(Bankruptcy Action, Doc. 100.) Ultimately, Goshen purchased all of the GLG Shares from Chambers at an auction held by the bankruptcy court on July 14, 2016 ("**Auction**"). (*See* Doc. 5-5, p. 5; *see also* Doc. 5-17, pp. 25–26.)

As a result of Goshen's acquisition of the GLG Shares at the Auction, Mr. Luna moved the bankruptcy court to substitute as GLG's counsel, replacing Mr. Bull. (2015 Adversary Proceeding, Doc. 47 ("**Substitution Motion**").) In his Substitution Motion, Mr. Luna represented that GLG's new sole shareholder, Bill Bymel ("**Bymel**"): (1) removed any and all persons seeking to act on behalf of GLG, which included Lavine; (2) appointed himself as sole director and officer of GLG; and (3) adopted bylaws for GLG. (*See id.* at 4.) Over Lavine's objection (2015 Adversary Proceeding, Doc. 56), the bankruptcy court entered the Substitution Order. (*See* Doc. 4-2.) In so doing, the bankruptcy court noted that Goshen was "the 100% owner of GLG and [held] all the powers of management, direction, and control related to GLG." (*Id.*)

On October 31, 2016, Lavine initiated the instant appeal ("**Appeal**"). (Doc. 1.) During the pendency of the Appeal, however, Goshen, Bymel, on behalf of GLG, and Debtor filed a joint stipulation dismissing the 2016 Adversary Proceeding. (*See* Doc. 27; *see also* 2015 Adversary Proceeding, Doc. 176.) The bankruptcy court dismissed the 2016 Adversary Proceeding on May 9, 2017. (*See* 2015 Adversary Proceeding, Doc. 181 ("**Dismissal Order**").) In light of the Dismissal Order, the Court directed Lavine to show cause why the Appeal should not be dismissed as moot. (Doc. 29 ("**Show Cause Order**").) Lavine timely responded to the Show Cause Order. (Doc. 30.)

## II. LEGAL STANDARD

Federal courts operate under "a continuing obligation to inquire into the existence of subject matter jurisdiction whenever it may be lacking." *RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1313 (11th Cir. 2013). In reviewing decisions of a bankruptcy court, a district court functions as an appellate court. *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). As such, a district court has appellate jurisdiction over "final judgments, orders and decrees" from the bankruptcy court. 28 U.S.C. § 158(a)(1). Unless leave to appeal is first granted, a district court lacks appellate jurisdiction over interlocutory orders from the bankruptcy court. 28 U.S.C. § 158(a)(2), (3).

### III. ANALYSIS

An order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). In the bankruptcy context, "finality is given a more flexible interpretation . . . because bankruptcy is an aggregation of controversies and suits," which involves multiple parties and is protracted in nature. *In re Donovan*, 532 F.3d 1134, 1136–37 (11th Cir. 2008). Hence a bankruptcy court's order is final if it "completely resolves all the issues pertaining to a discrete claim, including issues as to the proper relief." *Id.* at 1136–37 (quoting *In re Atlas*, 210 F.3d 1305, 1308 (11th Cir. 2000)). The Substitution Order does not completely resolve issues related to a discrete claim. Moreover, courts that have addressed the character of substitution orders have concluded that such orders are interlocutory. *See In re M.T.G.*, 403 F.3d 410, 413 (6th Cir. 2005) ("Generally a bankruptcy court's order approving or substituting counsel in a bankruptcy proceeding is not appealable.") (quoting *In re Cottrell*, 876 F.2d 540, 542 (6th Cir. 1989)); *In re Sylvania Elec. Prods.*, 220 F.2d 423, 424

(1st Cir. 1955) (noting that an order granting party substitution "was obviously interlocutory in character").[3]

Because the Substitution Order is an interlocutory order, Lavine was required to seek leave of court.[4] *See* 28 U.S.C. § 158(a)(3). Though Lavine failed to specifically do so, the Court elects to exercise its discretion to treat Lavine's notice of appeal as a motion for leave to appeal the Substitution Order. *See* Fed. R. Bankr. P. 8004(b). However, doing so is to no avail.

An interlocutory order is appealable under § 1292(b) where it is not otherwise explicitly appealable under the other sections of the Interlocutory Decisions Statute, 28 U.S.C. § 1292. Under § 1292(b), an interlocutory order may become appealable if the district court finds that: (1) the order involves a controlling question of law as to which there is substantial ground for difference of opinion; and (2) immediate appeal from the order may materially advance the ultimate termination of the litigation. *See Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016). An order involves a controlling question of

---

[3] *See also Bauer v. Commerce Union Bank, Clarksville, Tenn.*, 859 F.2d 438, 440 (6th Cir. 1988) (finding that a district court's order substituting a bankruptcy trustee as the proper plaintiff did not satisfy the collateral order doctrine, an exception to the final order rule).

[4] While the Bankruptcy Code permits a district court to review interlocutory orders, it does not provide criteria for determining *when* a court should exercise its discretionary authority to grant a party leave to appeal such orders. *See* 28 U.S.C. § 158(a)(3). Nonetheless, the U.S. Court of Appeals for the Eleventh Circuit has affirmed the application of 28 U.S.C. § 1292(b) to assess the propriety of interlocutory appeals from the bankruptcy court. *See In re Charter Co.*, 778 F.2d 617, 620 n.5 (11th Cir. 1985); *see also McCallan v. Hamm*, 502 B.R. 245, 247–48 (M.D. Ala. 2013) (collecting opinions from district courts within the Eleventh Circuit applying § 1292(b) to interlocutory bankruptcy orders).

law if it involves a matter that can be resolved without examining the record. *See McFarlin v. Conseco Servs., L.L.C.*, 381 F.3d 1251, 1258 (11th Cir. 2004).

Here, the issue of whether the bankruptcy court properly substituted counsel for GLG is not explicitly appealable under the other sections of the Interlocutory Decisions Statute. Applying § 1292(b), the Court finds that this issue does not present a "pure" legal question. Rather, to determine whether the bankruptcy court properly substituted Mr. Luna as GLG's counsel requires the Court to examine the series of transactions that led to Goshen's acquisition of the GLG Shares—an inquiry that necessarily involves review of the facts. *See, e.g., Amos v. Glynn Cty. Bd. of Tax Assessors*, 347 F.3d 1249, 1254 (11th Cir. 2003), *abrogated on other grounds by Exxon Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (denying interlocutory appeal under § 1292(b) because review would have been "too fact-intensive an inquiry"). Therefore, the Substitution Order does not satisfy the standard under § 1292(b), and, consequently, the Court declines to grant Appellants leave to appeal. Hence the Court lacks jurisdiction over this appeal, and it is due to be dismissed.

### IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Appellant's Amended Notice of Appeal (Doc. 1) is **DISMISSED**.

2. The Court's Show Cause Order (Doc. 29) is **DISCHARGED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 23, 2017.

-7-



Copies to:
Counsel of Record

-7-